Rec 55|949

67
A-L

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISIONI

TARMO, L.L.C., a Michigan limited
liability company,

      Plaintiff,

v.

GREAT SENECA FINANCIAL CORPORATION,
a Maryland corporation; UNITED STATES
OF AMERICA -- DEPARTMENT OF JUSTICE;
JOHN H. HOSKINS, JR. and MARILYN M. HOSKINS,
his wife, jointly and severally,

      Defendants.

Case: 2:06-cv-15592
Assigned To: Lawson, David M
Referral Judge: Scheer, Donald A
Filed: 12-14-2006 At 03:15 PM
CMP TARMO VS GREAT SENECA (LE)

---

THAV, GROSS, STEINWAY & BENNETT, P.C.
By:    BARRY A. STEINWAY (P24137)
Counsel for Plaintiff
30150 Telegraph Road, Suite 444
Bingham Farms, MI 48025
(248)  645-8202
(248)  593-8714 (Fax)

---

## VERIFIED COMPLAINT TO QUIET TITLE

---

NOW COMES Plaintiff, TARMO, L.L.C., a Michigan limited liability company, by

and through its attorneys, the law offices of THAV, GROSS, STEINWAY & BENNETT,

P.C., and for its Complaint, states as follows:

1.      Plaintiff, Tarmo, L.L.C., is a Michigan limited liability company (**"Tarmo"**), which

      conducts business in the County of Wayne, State of Michigan.

2.   Defendant, Great Seneca Financial Corporation (**"Great Seneca"**), is a Maryland corporation, which conducted business in the County of Wayne, State of Michigan.

3.   Defendant, United States of America, through its Department of Justice (**"USA"**) filed its Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act 1996 in the amount of $416,783.00, dated August 23, 2006 and recorded October 30, 2006 in Liber 45517, Page 135, Wayne County Records, a copy of which is attached hereto as **Exhibit "A".**

4.   Defendants, John H. Hoskins, Jr. and Marilyn M. Hoskins, his wife (**"Hoskins"**), are individuals, upon information and belief, residing in the City of Livonia, County of Wayne, State of Michigan

5.   The property at issue in this action to quiet title is situated in the City of Detroit, County of Wayne, State of Michigan, described on **Exhibit "B"** attached hereto and made a part hereof, with Parcel ID No. Ward 22, 007267-70 (**"Property"**).

6.   The current fee owner of the Property is Hoskins as reflected on the title commitment issued by Stewart Title Company dated November 1, 2006, a copy of which title commitment is attached hereto and made a part hereof as **Exhibit "C"**, and the Warranty Deed from Mark Robert Hawley, et. al. to Hoskins dated September 3, 1987, recorded in 1987 in Liber 23462 at Page 697, a copy of which is attached hereto as **Exhibit "D"** .

7.   A first Land Contract was entered into between Hoskins, Jr. and Marilyn M.

Hoskins, his wife, as Seller to Nemr Rahal, a married man and Taha Dika, a married man, as joint tenants with full rights of survivorship, as Purchaser, dated December 6, 2000 regarding the Property (**"First Land Contract"**). A copy of the Memorandum of Land Contract as recorded on February 16, 2001 in Liber 33239, Page 478, Wayne County Records, is attached hereto as **Exhibit "E".**

8.  A second Land Contract was entered into between Nemr Rahal and Rania Rahal, his wife and Taha Dika and Fatme Dika, his wife, as Sellers to Ali Hussein Assaf and Maher Hazime, as Purchaser, dated April 25, 2002 regarding the Property (**"Second Land Contract"**). A copy of the Land Contract is attached hereto as **Exhibit "F".**

9.  The interest of Ali Hussein Assaf in and to the Second Land Contract was assigned to Maher M. Hazime on November 11, 2004. A copy of the Assignment as recorded on June 17, 2005 in Liber 42989, Page 557, Wayne County Records, is attached hereto as **Exhibit "G"**.

10. The interest of Maher M. Hazime in and to the Second Land Contract was assigned to Tarmo on November 11, 2004. A copy of the Assignment as recorded on June 17, 2005 in Liber 42989, Page 555, Wayne County Records, is attached hereto as **Exhibit "H"**, and a copy of the Quit Claim Deed as recorded on June 17, 2005 in Liber 42989, Page 554, Wayne County Records is attached hereto as **Exhibit "I"**,

11. As a result of the payoff of the Second Land Contract, a Warranty Deed was

executed by Nemr Rahal and Rania Rahal, his wife, and Taha Dika and Fatme Dika, his wife, as Grantors to Tarmo, dated February 15, 2005, which was filed for recording with the Wayne County Register of Deeds on December 14, 2006, a copy of which is attached hereto as **Exhibit "J"**.

12.     An Assignment of Vendee's Interest in the First Land Contract was executed on February 15, 2005, transferring the interest of Nemr Rahal, a married man and Taha Dika, a married man, as Assignors to Tarmo, as Assignee, which was filed for recording with the Wayne County Register of Deeds on December 14, 2006, a copy of which is attached hereto as **Exhibit "K".**

13.     Defendant, Great Seneca is identified as subsequently having an interest in any rights of Nemr Rahal in the Property under a Notice of Judgment Lien in the amount of $8,440.72, dated December 28, 2005, and recorded on February 1, 2006 in Liber 44200, Page 194, Wayne County Records, a copy of which Judgment is attached hereto as **Exhibit "L".**

14.     Defendant, USA is identified as subsequently having an interest in any rights of Nemr Rahal in the Property under a Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act 1996 in the amount of $416,783.00, dated August 23, 2006, recorded October 30, 2006 in Liber 45517, Page 135, Wayne County Records (Exhibit "A".)

15.     Prior to the liens of Defendants, Great Seneca and USA, the interest of Nemr Rahal had been paid off, in full, as evidenced by the Warranty Deed **(Exhibit "J")** and the Assignment of Vendee's Interest **(Exhibit "K")**.

16.     Pursuant to statute, Tarmo is the current vendee under the First Land Contract of the Property, however, the interest of Defendants remain on title, clouding Tarmo's interest in the Property.

17.     As of the date hereof, upon information and belief, the Property is occupied by Ex Auto Repair, as the Lessee, under a Lease Agreement with Tarmo, as the Lessor, containing a structure thereon.

WHEREFORE, Tarmo moves that this Honorable Court enter Judgment declaring the following:

(A)     All of the adverse claims to Tarmo in and to the Property be determined by decree of this Court to be non-existent, except as to the building and use restrictions and easements of record, which shall be deemed existing but subordinate to the interest of Tarmo in and to the Property.

(B)     This Court declare and adjudge that Tarmo is the sole vendee of the First Land Contract of the Property and is entitled to the quiet and peaceful possession of the same, and that Defendants, and all persons claiming under Defendants, have no estate, title, right, lien or interest in and to the Property, or any part thereof.

(C)     The Judgment of this Court permanently enjoin Defendants and all persons claiming under Defendants, from asserting any adverse claim against Tarmo in and to the Property for the claims that may exist against Nemr Rahal.

(D)     That the liens of Great Seneca and the USA against the interest of Nemr

Rahal be released and extinguished from the record of the chain of title

as to the subject Property.

(E)     Tarmo be awarded its costs and such other and further relief as this

Court may deem just, proper and equitable.


I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY
KNOWLEDGE, INFORMATION AND BELIEF.

                    THAV, GROSS, STEINWAY & BENNETT, P.C.

         By:        _____
                    BARRY A. STEINWAY (P24137)
                    Counsel for Tarmo

DATED:     December 14, 2006



'6 0 1 7 8 7 7 3 0CT 30 '06

GRANTOR/GRANTEE INDEX
ONLY

Li=45517          Pa=135
204519637  10/30/2006  DP1DOAM
Bernard J. Youngblend
Wayne Co. Register of Deeds

NOTICE OF LIEN FOR FINE AND/OR RESTITUTION IMPOSED
PURSUANT TO THE ANTI-TERRORISM AND EFFECTIVE
DEATH PENALTY ACT OF 1996

| For Optional Use By Recording Office |
| --- |
| |

Serial Number
01

DEPARTMENT OF JUSTICE
United States Attorney's Office for the
Eastern District of Michigan

NOTICE is hereby given of a lien against the property of the defendant named below. Pursuant to Title 18, United States Code, § 3613(c), a fine or an order of restitution imposed pursuant to the provisions of subchapter C of chapter 227 is a lien in favor of the United States upon all property belonging to the person fined or ordered to pay restitution. Pursuant to § 3613(d), a notice of lien shall be considered a notice of lien for taxes for the purposes of any State or local law providing for the filing of a tax lien. The lien arises at the time of the entry of judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to § 3613(b).

Name of Defendant: Nemr Rahal                    Court Number: 05CR80476 01
Social Security No: XXX-XX-9268                    Date of Judgment: April 27, 2006
Address: 5479 Argyle, Dearborn, MI 48126
Amount of Fine/Restitution: $416,783.00            Interest Rate: 4.98 %
Court Imposing Judgment: E.D. of Michigan         Place of Filing: Wayne County, Michigan

If payments become past due, penalties totaling up to 25 percent of the principal amount past due may arise. 18 U.S.C. § 3612(g).
IMPORTANT RELEASE INFORMATION—With respect to the lien listed above, this notice shall operate as a certificate of release pursuant to 18 U.S.C. § 3613(b) by operation of law, but no later than 20 years from date of judgment and any term of imprisonment.

This notice was prepared and signed at Detroit, Michigan, on this 23 August 2006.

WITNESSED BY:

Elizabeth Becker

Judith Cieslak

State of Michigan )
                  ) SS.
County of Wayne )

The foregoing instrument was acknowledged
before Leslie C. Krawford on August 23, 2006.

Notary Public
My commission Expires

LESLIE C. KRAWFORD
Notary Public, State of Michigan
County of Oakland
My Commission Expires Jul. 28, 2012
Acting in the County of    WAYNE

Jacqueline M. Hotz (P352J9)
Assistant United States Attorney

DRAFTED BY AND RETURN TO:
Jacqueline M. Hotz
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9102

LN  9  VER  1P  OmD





Land situated in the City of Detroit, County of Wayne, State of Michigan, more particularly described as: Lots 1374 through 1377 inclusive, ROSEDALE PARK SUBDIVISION NO. 1, according to the plat thereof as recorded in Liber 37 of Plats, page 73, Wayne County Records.

19111 Grand River





Stewart Title Company

Commitment Number:   9574 REVISION #4

### SCHEDULE A

1. Commitment Date:    November 1, 2006 at 08:00 AM

2. Policy (or Policies) to be issued:                                                   Policy Amount

   (a) Owner's Policy          ( ALTA Own. Policy (10/17/92) )
       Proposed Insured:

   (b) Loan Policy             ( ALTA Loan Policy (10/17/92) )                          $ 200,000.00
       Proposed Insured:
       Interbay Funding, LLC, its successors and or assigns as their
       interests may appear

3. Fee Simple Interest in the land described in this Commitment is owned, at the Commitment Date, by:

   John H. Hoskins, Jr. and Marilyn M. Hoskins, his wife

4. The land referred to in the Commitment is described as follows:

   Land situated in the City of Detroit, County of Wayne, State of Michigan, more particularly described as: Lots
   1374 through 1377 inclusive, ROSEDALE PARK SUBDIVISION NO. 1, according to the plat thereof as
   recorded in Liber 37 of Plats, page 73, Wayne County Records.

   19111 Grand River

STEWART TITLE COMPANY

By: 

MICHIGAN TRUST TITLE, 24100
SOUTHFIELD RD., #315, SOUTHFIELD, MI
48075

ALTA Commitment
Schedule A (10/17/92)

(9574.PFD/9574/14)

Stewart Title Company

Commitment Number:   9574 REVISION #4

## SCHEDULE B - SECTION I
## REQUIREMENTS

The following requirements must be met:

1.   (a) Pay the agreed amounts for the interest in the land and/or the Mortgage to be insured

(b) Pay us the premiums, fees and charges for the policy

(c) Documents satisfactory to us creating the interest in the land and/or the Mortgage to be insured must be signed, delivered and recorded.

(d) You must tell us in writing the name of anyone not referred to in this commitment who will receive an interest in the land or who will make a loan on the land.  We may make additional requirements or exceptions relating to the interest or the loan.

2.   The loan policy to be issued will not include a Standard Exception for survey matters; a survey is not required.

3.   Warranty Deed from John H. Hoskins, Jr. and Marilyn M. Hoskins, husband and wife to Tarmo, L.L.C., a Michigan limited liability company in fulfillment of the Land Contract evidenced of record by the instrument recorded February 16, 2001 in Liber 33239, Page 478.

4.   REQUIREMENT:  Record mortgage to be insured executed by Maher M. Hazime and spouse if any to the party to be insured.

5.   Record release of Notice of Judgment Lien in the amount of $8,440.72 in favor of Great Seneca Financial Corporation against Nemr Rahal dated December 28, 2005 and recorded February 1, 2006 in Liber 44200, Page 194.

6.   Record release of Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 in the amount of $416,783.00 in favor of the United States against Nemr Rahal dated August 23, 2006 and recorded October 30, 2006 in Liber 45517, Page 135.

7.   Tax ID: Ward 22, Item No. 007267-70

Taxes paid through 2005

2006 Winter Taxes in the amount of $368.58.
2006 Summer Taxes in the amount of $3,789.96, balance $1,373.58 DUE.

REQUIREMENT: Pay in full all taxes or they shall appear as an exception on the policy to be issued.

NOTE: The amounts shown as DUE do not include interest, penalties or collection fees.

Stewart Title Company

Commitment Number:   9574 REVISION #4

## SCHEDULE B - SECTION II
## EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1.   Any discrepancies or conflicts in boundary lines, any shortages in area, or any encroachment or overlapping of improvements.

2.   Any facts, rights, interests or claims which are not shown by the public record but which could be ascertained by an accurate survey of the land or by making inquiry of persons in possession thereof.

3.   Easements, liens or encumbrances or claims thereof, which are not shown by the public record.

4.   Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished.

5    A. Covenants, conditions and restrictions, if any, appearing in the public records.
     B. Any easements or servitudes appearing in the public records.
     C. Any lease, grant, exception or reservation of mineral rights appearing in the public records.

6    Covenants, conditions and provisions contained in the Land Contract between John H. Hoskins, Jr. and Marilyn M. Hoskins, husband and wife, as seller, and Nemr Rahal, a married man and Taha Dika, a married man as joint tenants with full rights of survivorship, as purchasers, as disclosed by Memorandum of Land Contract dated December 6, 2000 and recorded February 16, 2001 in Liber 33239, Page 478, Wayne County Records.

7.   Covenants, conditions and provisions contained in the unrecorded Land Contract dated April 25, 2002 between Nemr Rahal and Rania Rahal, his wife, and Taha Dika and Fatme Dika, his wife, as sellers, and Ali Hussein Assaf and Maher M. Hazime, as purchaser. Vendee's interest is now held by Tarmo, L.L.C.

8.   Covenants, conditions and provisions contained in the lease between Tarmo, L.L.C., a Michigan limited liability company, as lessor and EZ Auto Repair, Inc., a Michigan corporation, as lessee, dated December 1, 2004.

9.   Taxes and assessments due and payable subsequent to the effective date of the commitment.

## QUIT CLAIM DEED
**STATUTORY FORM FOR INDIVIDUALS**

KNOW ALL MEN BY THESE PRESENTS: Maher M. Hazime, authorized agent for Tarmo, L.L.C., a Michigan limited liability company

Whose address is 19111 Grand River, Detroit, MI 48223

Quit Claims to: Maher M. Hazime, a ___married___ man

Whose address is 5835 Kenilworth St., Dearborn, MI 48128

The following described premises situated in the City of Detroit, County of Wayne, State of Michigan, more particularly described as:

Lots 1374 through 1377 inclusive, ROSEDALE PARK SUBDIVISION NO. 1, as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

Parcel #: Ward 22, Item No. 007267-70
More commonly known as: 19111 Grand River

For the full consideration of: $1.00, EXEMPT pursuant to MCLA 207.505(5)(a) and MCLA 207.526(6)(a).

Subject to building and use restrictions and easements of record, if any.

Dated this 14 day of November , 2006

Signed by:

Tarmo, L.L.C., a Michigan limited liability company

Maher M. Hazime, authorized agent

State of Michigan
County of Oakland

The foregoing instrument was acknowledged before me this 14 day of November 2006, 2006 by Maher M. Hazime, authorized agent, Tarmo, L.L.C., a Michigan limited liability company.

Notary Public

LORETTA EICKHOFF
NOTARY PUBLIC, STATE OF MI
COUNTY OF WASHTENAW
MY COMMISSION EXPIRES Oct 22, 2012
ACTING IN COUNTY OF Oakland .

My Commission Expires:

| County Treasurer's Certificate | City Treasurer's Certificate |
|---|---|
| Drafted by: Grantor | Return to: Grantee |

Case 2:06-cv-13582-DML-DAS  ECF No. 1  PageID.16  Filed 12/14/06  Page 16 of 50

11/17/06  12:37 FAX 248 365 0908    FIRST MOUNTAIN MORTGAGE    MICHTRUST ORDER  PROCESSING DEPT MTT  PAGE  06/26
NOV-15-2006  16:26        OFFICES OF SUITE 444    12486461700  P.02/03

## WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS that Nemr Rahal and Rania Rahal, his wife and Taha Dika and Fatme Dika, his wife, whose address is 7515 Freda Street, Dearborn, Michigan 48125

Conveys and Warrants to Tarmo, L.L.O., a Michigan limited liability company, whose address is 19111 Grand River, Detroit, Michigan 48223

the following described premises situated in the City of Detroit, County of Wayne, and State of Michigan, to-wit:

Lots 1374, 1275, 1376 and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

Commonly known as:      19111 Grand River Avenue
Parcel ID No.:          Ward 22, 007367-70

for the full consideration of Ninety-Seven Thousand Six Hundred Seventy and 41/100 ($97,670.41) Dollars

subject to all easements and restrictions of record, if any, and to any applicable zoning ordinances which may affect the subject property and subject to any liens and/or encumbrances as shall have accrued or attached through the acts or omissions of parties other than the Grantor herein since April 26, 2002, the date of the Land Contract in pursuance to which this Deed is given.

Further, this conveyance is subject to a certain Land Contract dated December 9, 2000, between John H. Hoskins, Jr. and Marilyn M. Hoskins, husband and wife, as Seller and Nemr Rahal, a married man and Taha Dika, a married man, as joint tenants with full rights of survivorship, as Buyer, which Vendee's interest has been assigned to Grantee hereunder, and which Grantee assumes and agrees to pay.

Dated this 15 day of February, 2005               R.Ycae.26 to 48 042

By: _____          By: _____
    Nemr Rahal                           Rania Rahal, his wife

By: _____          By: _____
    Taha Dika                            Fatme Dika, his wife
    D.007859075863.

STATE OF MICHIGAN        }
                         } ss.        2-15-2005
COUNTY OF WAYNE          }

The foregoing instrument was acknowledged before me this ___ day of February, 2005, by Nemr Rahal and Rania Rahal, his wife and Taha Dika and Fatme Dika

                              Notary Public - County Michigan
                              Acting in _____ County, Michigan
                              My commission expires: 3-5c-2011

See Page 2 for Continuation of Warranty Deed

Instrument Drafted By:                 Business Address:
Barry A. Stabsway, Esquire             30150 Telegraph Road, Suite 444
                                       Bingham Farms, MI 48025

___County Treasurer's Certificate___   ___City Treasurer's Certificate___

Recording Fee        $18.00            When Recorded Return To:   GRANTEE
State Transfer Tax:  $732.53           Send Subsequent Tax Bills To:  GRANTEE
County Transfer Tax: $107.44
Tax Parcel No.:      Ward 22, 007257-70

Branch :MTT.User :MT01          Title Officer: KRIS B.   Order: 9374
                               Comment: 19111GRRIVER



402530 – JUN 1 7 2005

Li-42989     Fee554
2005301236   4/17/2005
Bernard J. Youngblood
Wayne Co. Register of Deeds

## QUIT CLAIM DEED

KNOW ALL MEN BY THESE PRESENTS that Maher M. Hazime, whose address is 19111 Grand River, Detroit, Michigan 48223

quit claims to Tenmo, L.L.C., a Michigan limited liability company, whose address is 19111 Grand River, Detroit, Michigan 48223

the following described premises situated in the City of Detroit, County of Wayne, and State of Michigan, to-wit:

> Lots 1374, 1375, 1376, and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.
>
> Commonly known as:          19111 Grand River Avenue
> Parcel ID No.:               Ward 22, 007267-70

for the full consideration of One and 00/100 ($1.00) Dollar

Dated this 10th day of February, 2005

By: _____
    Maher M. Hazime

STATE OF MICHIGAN          } ss.
COUNTY OF OAKLAND          }

The foregoing instrument was acknowledged before me this 10th day of February, 2005, by Maher M. Hazime.

                            _____
                            Notary Public - Cheryl D. Rachwal
                            Wayne County Michigan
                            Acting in Oakland County, Michigan
                            My commission expires: 5/14/07

Instrument Drafted By:          Business Address:
Barry A. Steinway, Esquire      30150 Telegraph Road, Suite 444
                                Bingham Farms, MI 48025

| **County Treasurer's Certificate** | **City Treasurer's Certificate** |
|---|---|
| | When Recorded Return To:   GRANTEE |
| Recording Fee      $16.00 | Send Subsequent Tax Bills To:  GRANTEE |
| State Transfer Tax and County Transfer Tax: Exempt Pursuant to MCL 207.505(a) and MCL 207.526(a) | This is to certify that there are no tax liens or titles on the property and that taxes are paid for FIVE YEARS previous to date of this instrument. |
| Tax Parcel No.:    Ward 22, 007267-70 | JUN 15 2005 |
| | No. 9220  City Treasurer, City of Detroit |
| | NO REVENUE ATTACHED |

QCD  G-4R  /P  S.E(a)

WAYNE,MI                    Page 1 of 1          Printed on 11/10/2006 1:43:13 PM
Document: DD QC 42989.554

Branch :MTT,User :MT01

Title Officer: KRIS B.  Order: 9574
Comment: 19111GRRIVER

Station Id :CWPP



602530  . JUN 1 7 2005

L1-42939     Ps-355
205301296   6/17/2005
Bernard J. Youngblood
Wasne Co. Register of Deeds

## ASSIGNMENT OF LAND CONTRACT
### (VENDER'S INTEREST)

Maher M. Hazime, whose address is 5635 Kenilworth St., Dearborn, Michigan 48126 ("Assignor"), for $1 and valuable consideration, receipt of which is acknowledged, hereby transfers and assigns to Tarmo, L.L.C., ("Assignee") whose address is 19111 Grand River Ave., Detroit, Michigan 48223, all of Assignor's right, title, and interest in and to that certain Land Contract dated April 25, 2002, executed between Nemr Rahal and Rania Rahal, his wife and Teha Dike and Fatme Dike, his wife, as Sellers, and Ali Hussein Assaf and Maher M. Hazime, as Purchaser, for the sale of land situated in the City of Detroit, County of Wayne, State of Michigan, more particularly described on Exhibit "A" attached hereto and made a part hereof.  Assignee accepts this Assignment and agrees to perform the obligations of Assignor thereunder.  UNRGG,OEG

IN WITNESS WHEREOF, the undersigned has executed and delivered this Assignment as of this 17th day of Nov. , 2004.

ASSIGNOR:

witness    EVERY D. RACHUM

Maher M. Hazime

ASSIGNEE:
Tarmo, L.L.C.

witness

By: Maher M. Hazime
Its: Authorized Member

STATE OF MICHIGAN   )
COUNTY OF OAKLAND   )

On Nov. 11 , 2004, before me, a notary public, personally appeared Maher M. Hazime, who executed this instrument and acknowledged the same to be his free act and deed.

Signature of Notary Public
Eric Glick , Notary Public
Oakland County, Michigan
Acting in Oakland County, Michigan
Commission expires: 10/4/2005

Drafted by and when recorded return to:
Barry A. Steinway, Esq.
Thav, Gross, Steinway & Bennett, P.C.
30150 Telegraph Road, Ste 444
Bingham Farms, Michigan 48025

State and County Transfer Tax:
Exempt Pursuant to MCL 207.505(a) and MCL 207.526(a)

ERIC GLICK
Notary Public, Oakland County, MI

ALC  12-6R  2P  S

WAYNE,MI
Document: LC AS 42989.555

Page 1 of 2

Printed on 11/10/2006 1:42:58 PM

Title Officer: KRIS B.   Order: 9574
Comment: 19111GRRIVER



LI-42989      Pa-556

## EXHIBIT "A"
### (ASSIGNMENT OF LAND CONTRACT [Vendee's Interest])

The following property is located in the City of Detroit, County of Wayne, State of Michigan, to-wit:

Lots 1374, 1375, 1376 and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

Commonly known as:          19111 Grand River Avenue
Parcel ID No.:              Ward 22, 007267-70

This is to certify that there are no tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to date of this instrument.

JUN 05 2005

No. 9920  Clerk
Treasurer, City of Detroit

This is to certify that there are no tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to date of this instrument EXCEPT
No. 6251 _____ Date 11/10/06
WAYNE COUNTY TREASURER   Clerk

10:58   24833113+1   PROCESSING DEPT MTT   PAGE 11/26

Branch :MTT.User :MT01   Title Officer: KRIS B.  Order: 9574   Station Id :CWPP
Comment: 19111GRRIVER



602530   JUN 1 7 2005

LI-42989   Px-557
205301397   6/17/2005
Bernard J. Youngblood
Wayne Co. Register of Deeds

## ASSIGNMENT OF LAND CONTRACT
### (VENDEE'S INTEREST)

Ali Hussein Assaf, whose address is 5430 Williamson St., Dearborn, Michigan 48126 ("Assignor"), for $1 and valuable consideration, receipt of which is acknowledged, hereby transfers and assigns to Maher M. Hazime, ("Assignee") whose address is 5635 Kenilworth St., Dearborn, Michigan 48126, all of Assignor's right, title, and interest in and to that certain Land Contract dated April 25, 2002, executed between, Nemr Rehal and Rania Rahal, his wife and Taha Dika and Fatme Dika, his wife, as Sellers, and Ali Hussein Assaf and Maher M. Hazime, as Purchaser, for the sale of land situated in the City of Detroit, County of Wayne, State of Michigan, more particularly described on Exhibit "A" attached hereto and made a part hereof. Assignee accepts this Assignment and agrees to perform the obligations of Assignor thereunder. UNRECORDED

IN WITNESS WHEREOF, the undersigned has executed and delivered this Assignment as of this 1 7h day of NOV. , 2004.

ASSIGNOR:

witness CHERYL D BRENNER           Ali Hussein Assaf

ASSIGNEE:

witness                           Maher M. Hazime

STATE OF MICHIGAN   )
COUNTY OF OAKLAND   )

On NOV.11 , 2004, before me, a notary public, personally appeared Ali Hussein Assaf and Maher M. Hazime, who executed this instrument and acknowledged the same to be their free act and deed.

Signature of Notary Public
Eric Glick , Notary Public
Oakland County, Michigan
Acting in Oakland County, Michigan
Commission expires: 10/11/2005

Drafted by and when recorded return to:
Barry A. Steinway, Esq.
Thav, Gross, Steinway & Bennett, P.C.
30150 Telegraph Road, Ste 444
Bingham Farms, Michigan 48025

ERIC GLICK
Notary Public, Oakland County, MI
My Commission Expires 10-11-2005

State and County Transfer Tax:
Exempt Pursuant to MCL 207.505(a) and MCL 207.526(a)
ALC A56 — 1.2 OR 2P   5 /M

WAYNE,MI                    Page 1 of 2            Printed on 11/10/2006 1:42:38 PM
Document: LC AS 42989.557



Li-42989    Pa-558

### EXHIBIT "A"
### (ASSIGNMENT OF LAND CONTRACT [Vendee's Interest])

The following property is located in the City of Detroit, County of Wayne, State of Michigan, to-wit:

Lots 1374, 1375, 1376 and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

Commonly known as:       19111 Grand River Avenue
Parcel ID No.:           Ward 22, 007267-70

This is to certify that there are no tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to date of this instrument.

JUN 1 5 2005

NO. 7720 Clerk
Treasurer, City of Detroit

This is to certify that there are no tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to date of this instrument EXCEPT _____
No. _____ Rec'd _____ Date 1/15/2005
WAYNE COUNTY TREASURER   Clerk

Branch :MTT,User :MT01
Title Officer: KRIS B.  Order: 9574
Comment: 19111GRRIVER
Station Id :CWPP

TRANS

01019621  FEB 16 2001

FIRST CENTENNIAL TITLE, INC

Liber-33239    Page-478
201076898  2/16/2001
Bernard J. Youngblood, Wayne Co. Register of Deeds

Cen 105561

## MEMORANDUM OF LAND CONTRACT

THIS MEMORANDUM OF LAND CONTRACT entered into this __6th__ day of __December, 2000__

by and between:

__John H. Hoskins, Jr. and Marilyn M. Hoskins, husband and wife__ , whose address is

__18626 Gillman, Livonia, MI  48152__ , hereinafter "Seller"

and __Hany Rahal, a married man and Taha Diza, a married man as joint tenants with full__ , whose address is

__rights of survivorship, 7515 Freda, Dearborn, MI  48126__ , hereinafter "Buyer"

### WITNESSETH:

WHEREAS, Buyer and Seller have entered into a Land Contract of even date herewith; and,

WHEREAS, the parties desire to enter into this Memorandum of Land Contract to give record notice of existence of said Land Contract.

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration Seller acknowledges and agrees that they have sold to Buyer on the Land Contract dated __December 6, 2000__

the following described premises situated in the __City__ of __Detroit__

County of __Wayne__ and State of Michigan, to-wit;

Lots 1374, 1375, 1376 and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

19111 Grand River Ave., Detroit, MI

Ward 22, 007267-70

The purpose of this Memorandum of Land Contract is to give record notice to the existence of the aforesaid Land Contract.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum of Land Contract and have caused their hands and seals to be affixed hereto the day and year first above written.

Signed, Sealed and Delivered
in Presence of:

_____ (L.S.)
J. Siebe                        John H. Hoskins, Jr.

Patricia A. Wright              _____ (L.S.)
PATRICIA A. WRIGHT              Marilyn M. Hoskins

_____ (L.S.)

_____ (L.S.)

STATE OF MICHIGAN

COUNTY OF __Wayne__ ss.

The foregoing instrument was acknowledged before me this __6th__ day of __December, 2000__

by __John H. Hoskins, Jr. and Marilyn M. Hoskins, husband and wife__

Drafted by and return to:
John H. Hoskins, Jr.
c/o First Centennial Title, Inc.
14600 Farmington Road #107
Livonia, MI  48154

_____
Notary Public, __Wayne__ County, Michigan

My Commission Expires: __12-11-02__

JOANNE E. ABELER
NOTARY PUBLIC STATE OF MI
MY COMMISSION EXPIRES Dec 11, 2002

Form 3238-0

LCM /Reg Sch



WARRANTY DEED—D31

The Grantor(s)  **Mark Robert Hawley, a single man,**
**Russell Lee Hawley, a single man and**
**Marcy Ann Hawley, a single woman**
, whose address is

26311 Cathedral, Redford, Michigan

conveys and warrants to    John H. Hoskins, Jr. and
Marilyn M. Hoskins, his wife

whose address is    13624 Gillman, Livonia, MI  48152

the following described premises situated in the    City
of    Detroit    , County of    Wayne
and State of Michigan:

Lots 1374 through 1377 inclusive, Rosedale Park
Subdivision No. 1, as recorded in liber 37,
page 73 of Plats, Wayne County Records,
commonly known as 19111 Grand River,
Detroit, Michigan

for the sum of  $50,000.00    Fifty Thousand Dollars

subject to easements and building and use restrictions of record and further subject to

all matters, liens or encumbrances rising from or created
through the acts or omissions of parties other than the
Grantors since February 3, 1987, the date of a certain Land
Contract, in fulfillment of which, this Deed is given.

Dated this _____ day of ____September_____        87

Signed by:                                Signed by:

**THOMAS F. CHENOT**                       **MARK ROBERT HAWLEY**

**Anne Marie Rossmann**                    **RUSSELL LEE HAWLEY**

**Anne Marie Rossmann**                    **MARCY ANN HAWLEY**

**STATE OF MICHIGAN.**  }
COUNTY OF ____Oakland____  } ss.

The foregoing instrument was acknowledged before me the ____3____ day of ___September___
19__87__ by

Mark Robert Hawley, Russell Lee Hawley and Marcy Ann Hawley

**THOMAS F. CHENOT**
Notary Public,               Oakland          County,
Michigan
My commission expires    4-2-90

County Treasurer's Certificate

This is to certify that there are no tax liens or titles on this property and that taxes are paid for FIVE YEARS previous to the date of this instrument EXCEPT

7601                                          OCT 8 1987

When Recorded Return To:
Anne Marie Rossmann
National Bank of Detroit
Detroit MI 48232

City Treasurer's Certificate

Send Subsequent Tax Bills To:      Drafted By:
Grantees                            THOMAS F. CHENOT
                                    32523 Grand River Ave
                                    Farmington, MI  48024
                                    (313) 476-7387

Tax Parcel                          Recording Fee          Transfer Tax  $75.00

TYPE OR PRINT NAMES UNDER SIGNATURES

WAYNE,MI                            Page 1 of 1              Printed on 11/10/2006 1:43:18 PM

Document: DD WT 23462.697

Branch :MTT,User :MT01

Title Officer: KRIS B.  Order: 9574
Comment: 19111 GRRIVER

Station Id :CWPP

018761  FEB01 2006  For use by Register of Deeds

GRANTOR/GRANTEE INDEX
ONLY

Approved, SCAO

| Original - Register of deeds | 3rd copy - Judgment debtor |
| 1st copy - Court | 4th copy - Return of service |
| 2nd copy - Judgment creditor | |

| STATE OF MICHIGAN | NOTICE OF JUDGMENT LIEN | CASE NO. |
| 19TH JUDICIAL DISTRICT JUDICIAL CIRCUIT | | GC065162 |
| Court address  16077 MICHIGAN AVE | | Court telephone no. |
| DEARBORN MI  48126 | | 313-943-2060 |

Plaintiff name
GREAT SENECA FINANCIAL CORPORATION

Defendant name
NEDR RAHAL

Judgment creditor's name and address
GREAT SENECA FINANCIAL CORPORATION.
A MARYLAND CORPORATION
ASSIGNEE OF CITIBANK

P.O. BOX 1651

ROCKVILLE MD 20849-1651

Judgment debtor's name and address
NEDR RAHAL
5478 ARGYLE ST
DEARBORN MI  48126

Last 4 digits of social security no. or tax identification no.
XXX-XX-826X

Judgment creditor's attorney, bar no., address, and telephone no.
VOLPOFF & ABRAMSON, L.L.P.
ATTORNEYS IN THE PRACTICE OF DEBT COLLECTION
PAUL T. OLIVIER, JR. P48472/MEGAN FINK P60333
REBECCA KREISHER P63902/COREY M. CARPENTER P67818
CHERICE A. TAODAY P67799/KATHY CHRISTIAN P64670
39500 HIGH POINTE BLVD., SUITE 250,
NOVI, MI 48375-2404 /248-855-0502 /1-866-241-2334

RETURN TO:

Judgment debtor's attorney, bar no.  address, and telephone no.

$8,809.33
through 12/10/06

Wayne  County
COURT MICHIGAN

1.  I am recording a judgment lien with the register of deeds in _____ Wayne _____ County
against the judgment debtor's current or future interest in real property.
2.  The current balance due on the judgment is $ _____ 8440.72 _____
3.  The judgment was entered on _____ 10/20/2005 _____ and expires _____ 10/20/2015 _____
4.  Except as otherwise prescribed by statute, this judgment lien expires 5 years after the date it is recorded with the
register of deeds or when the underlying judgment expires, whichever is earlier.

12/28/05
Date

CNM PLTD88
Signature of judgment creditor/judgment creditor's attorney

CERTIFICATION

I certify that the above notice of judgment lien is in proper form.

Clerk of the Court:

1-13-2006
Date

Signed by:  Sharon E. Langen
Deputy clerk

This document must be sealed by the seal of the court.

JGL  9 6R  1P  DS

MC 94 (6/04) NOTICE OF JUDGMENT LIEN
MC94/MILIEN  USE FILE NO. 139307933

MCL 600.2805
MCM 600.804

WAYNE,MI
Document: CP JG 44200.194  TRACY KLINE

Page 1 of 1

Printed on 11/10/2006 2:14:59 PM

Branch :MTT,User :MT01                    Comment:                              Station Id :CWPP

'6 0 1 7 8 7 7 3 00 30 '06

LI-45517        Pa-135
204519637  10/30/2006  09:00AM
Bernard J. Youngblood
Wayne Co. Register of Deeds
01

GRANTOR/GRANTEE INDEX
ONLY

NOTICE OF LIEN FOR FINE AND/OR RESTITUTION IMPOSED
PURSUANT TO THE ANTI-TERRORISM AND EFFECTIVE
DEATH PENALTY ACT OF 1996

| For Optional Use By Recording Office |

DEPARTMENT OF JUSTICE
United States Attorney's Office for the
Eastern District of Michigan

Serial Number
01

NOTICE is hereby given of a lien against the property of the defendant named below. Pursuant to Title 18, United States Code, § 3613(c), a fine or an order of restitution imposed pursuant to the provisions of subchapter C of chapter 227 is a lien in favor of the United States upon all property belonging to the person fined or ordered to pay restitution. Pursuant to § 3613(d), a notice of lien shall be considered a notice of lien for taxes for the purposes of any State or local law providing for the filing of a tax lien. The lien arises at the time of the entry of judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to § 3613(b).

Name of Defendant: Nemr Rahal
Social Security No: XXX-XX-9268
Address: 5479 Argyle, Dearborn, MI 48126
Amount of Fine/Restitution: $416,783.00
Court Imposing Judgment: E.D. of Michigan

Court Number: 05CR80476 01
Date of Judgment: April 27, 2006

Interest Rate: 4.98%
Place of Filing: Wayne County, Michigan

If payment becomes past due, penalties totaling up to 25 percent of the principal amount past due may arise. 18 U.S.C. § 3612(g).
IMPORTANT RELEASE INFORMATION--With respect to the lien listed above, this notice shall operate as a certificate of release pursuant to 18 U.S.C. § 3613(b) by operation of law, but no later than 20 years from date of judgment and any term of imprisonment.

This notice was prepared and signed at Detroit, Michigan, on this 23 August 2006.

WITNESSED BY:

Elizabeth Becker

Judith Cieslak

Jacqueline M. Hotz (P35219)
Assistant United States Attorney

State of Michigan )
                  ) SS.
County of Wayne )

The foregoing instrument was acknowledged
before Leslie C. Krawford on August 23, 2006.

LESLIE C. KRAWFORD
Notary Public, State of Michigan
County of Oakland
My Commission Expires Jul. 28, 2012
Acting in the County of _____ WAYNE

Notary Public
My commission Expires

DRAFTED BY AND RETURN TO:
Jacqueline M. Hotz
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9102

LN 9 UR 1P OMD

DETROIT REAL ESTATE BOARD FORM—BUSINESS PROPERTY LEASE                    Form 112-A

(1)  *This Lease* Made this ...... 1st .............. day of ... December .... №2004

by and between ...... TARNO, L.L.C., a Michigan limited liability company ...................

.................................................................................................................

.................................................................................................................

the Lessor, hereinafter designated as the Landlord, and .... EZ AUTO REPAIR, INC., a Michigan ..........

corporation .........................................................................................................

the Lessee, hereinafter designated as the Tenant.

**Description**

(2)  WITNESSETH: The Landlord, in consideration of the rents to be paid and the covenants and agreements to be performed by the Tenant, does hereby lease unto the Tenant the following described premises situated in the

..... the City of Detroit .... County of Wayne, State of Michigan ..........................

to-wit:  Lots 1374, 1375, 1376  and 1377 Rosedale Park Subdivision No. 1,

................ according to the plat thereof as recorded in Liber 37 of .................

.................. Plats, Page 73, Wayne County Records ........................................

..... Commonly known as: 19111 Grand River, Detroit, Michigan ..............................

**Term**

(3)  For the term of .. month-to-month, ..................................................... 2004

from and after the ................. 1st ................. day of .... December ................... 20 ...

fully when completed and yielded, the Tenant yielding and paying during the continuance of this lease unto the Landlord

**Rent**

for rent of said premises at the rate of ..... monthly .... Two Thousand Four Hundred and 00/100 ......

..... Dollars .................................................................... ($ 2,400.00 ...... )

in lawful money of the United States payable in monthly installments in advance, upon the ...... 1st , ...... day

of each and every month such as x x x .

.................................................................................................................

.................................................................................................................

.................................................................................................................

.................................................................................................................

.................................................................................................................

**Rent**

(4)  The Tenant hereby hires the said premises for the said term as above mentioned and covenants well and truly to pay, or cause to be paid unto the Landlord at the dates and times above mentioned, the rent above reserved.

**Insurance**

(5)  In addition to the rentals hereinbefore specified, the Tenant agrees to pay as additional rental any increase on premiums for insurance against loss by fire that may be charged during the term of this lease on the buildings and insurance now carried by the Landlord on the premises and on the improvements situated on said premises, resulting from the business carried on in the leased premises by the Tenant or the character of its occupancy, whether or not the Landlord has consented to the same.

(6)  If the Tenant shall default in any payment or expenditure other than rent required to be paid or expended by the Tenant under the terms hereof, the Landlord may at his option make such payment or expenditure, in which event the amount thereof shall be payable as rental to the Landlord by the Tenant on the next ensuing rent day together with interest at 7% per annum from the date of such payment or expenditure by the Landlord and on default in such payment the Landlord shall have the same remedies as on default in payment of rent.

(7)  All payments of rent or other sums to be made to the Landlord shall be made at such place as the Landlord shall designate in writing from time to time.

**Assignment**

(8)  The Tenant covenants not to assign or transfer this lease or hypothecate or mortgage the same or sublet said premises or any part thereof without the written consent of the Landlord. Any assignment, transfer, hypothecation, mortgage or subletting without said written consent shall give the Landlord the right to terminate his lease and to re-enter and repossess the leased premises.

**Bankruptcy and Insolvency**

(9)  The Tenant agrees that if the estate created hereby shall be taken in execution, or by other process of law, or if the Tenant shall be declared bankrupt or insolvent, according to law, or any receiver be appointed for the business and property of the Tenant, or if any assignment shall be made of the Tenant's property for the benefit of creditors, then and in such event this lease may be cancelled at the option of the Landlord.

**Right to Mortgage**

(10)  The Landlord reserves the right to subject and subordinate this lease at all times to the lien of any mortgage or mortgages now or hereafter placed upon the Landlord's interest in the said premises and on the land and buildings of which the said premises are a part or upon any buildings hereafter placed upon the land of which the leased premises form a part. And the Tenant covenants and agrees to execute and deliver upon demand such further instrument or instruments subordinating this lease to the lien of any such mortgage or mortgages as shall be desired by the Landlord and any mortgagees or proposed mortgagees and hereby irrevocably appoints the Landlord the attorney-in-fact of the Tenant to execute and deliver any such instrument or instruments for and in the name of the Tenant.

**Use and Occupancy**

(11)  It is understood and agreed between the parties hereto that said premises during the continuance of this lease shall be used and occupied for.................................................................................................................................. and for no other purpose or purposes without the written consent of the Landlord, and that the Tenant will not use the premises for any purpose in violation of any law, municipal ordinance or regulation, and that on any breach of this agreement the Landlord may at his option terminate this lease forthwith and re-enter and repossess the leased premises.

**Fire**

(12)  It is understood and agreed that if the premises hereby leased be damaged or destroyed in whole or in part by fire or other casualty during the term hereof, the Landlord will repair and restore the same to good tenantable condition with reasonable dispatch, and that the rent herein provided for shall abate entirely in case the entire premises are untenantable and pro rata for the portion rendered untenantable, in case a part only is untenantable, until the same shall be restored to a tenantable condition; provided, however, that if the Tenant shall fail to adjust his own insurance or to remove his damaged goods, wares, equipment or property within a reasonable time, and as a result thereof the repairing and restoration be delayed, there shall be no abatement of rental if such fire or other cause damaging or destroying the leased premises shall result from the negligence or willful act of the Tenant, his agents or employees, and provided further that if the Tenant shall use any part of the leased premises for storage during the period of repair a reasonable charge shall be made therefor against the Tenant, and provided further that in case the leased premises, or the building of which they are a part, shall be destroyed to the extent of more than one-half of the value thereof, the Landlord may at his option terminate the lease forthwith by a written notice to the Tenant.

**Repairs**

(13)  The Landlord after receiving written notice from the Tenant and having reasonable opportunity thereafter to obtain the necessary workmen therefor agrees to keep in good order and repair the roof and the four outer walls of the premises but not the doors, door frames, the window glass, window casings, window frames, windows or any of the appliances or appurtenances of said doors or window casings, window frames and windows, or any attachment thereto or attachments to said building or premises used in connection therewith.

**Insurance**

And the Tenant agrees to keep the plate glass insured with a responsible Insurance Company in the name of the Landlord and to deliver the policy or policies to the Landlord and upon his failure to do so the Landlord may place such insurance and charge the same to the Tenant as so much additional rent as provided in Paragraph 6; but the failure on the part of the Landlord to place such insurance does not release the Tenant of the liability.

**Tenant to Indemnify**

(14)  The Tenant agrees to indemnify and hold harmless the Landlord from any liability for damages to any person or property in, on or about said leased premises from any cause whatsoever; and Tenant will procure and keep in effect during the term hereof public liability and property damage insurance for the benefit of the Landlord in the sum of

One Hundred Thousand and 00/100 ($100,000.00) Dollars ................. for damages resulting to one

person and ......... Five Hundred Thousand and 00/100 ($500,000.00) Dollars ......... for damages result-

ing from one casualty, and......... Five Hundred Thousand and 00/100 ($500,000.00) Dollars .........
property damage insurance resulting from any one occurrence. Tenant shall deliver said policies to the Landlord and upon Tenant's failure so to do the Landlord may at his option obtain such insurance and charge the cost thereof to the Tenant as additional rent due and payable upon the next ensuing rent day.

**Repairs and Alterations**

(15)  Except as provided in Paragraph 13 hereof, the Tenant further covenants and agrees that he will, at his own expense, during the continuation of this lease, keep the said premises and every part thereof in as good repair and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted. The Tenant shall not make any alterations, additions or improvements to said premises without the Landlord's written consent, and all alterations, additions or improvements made by either of the parties hereto upon the premises, except movable office furniture and trade fixtures put in at the expense of the Tenant, shall be the property of the Landlord, and shall remain upon and be surrendered with the premises at the termination of this lease, without molestation or injury.

The Tenant covenants and agrees that if the demised premises consists of only a part of a structure owned or controlled by the Landlord, the Landlord may enter the demised premises at reasonable times and install or repair pipes, wires and other appliances or make any repairs deemed by the Landlord essential to the use and occupancy of other parts of the Landlord's building.

**Eminent Domain**

(16)  If the whole or any part of the premises hereby leased shall be taken by any public authority under the power of eminent domain, then the term of this lease shall cease on the part so taken, from the day the possession of that party shall be required for any public purpose and the rent shall be paid up to that day; from that day the Tenant shall have the right either to cancel this lease and declare the same null and void or to continue in the possession of the remainder of the same under the terms herein provided, except that the rent shall be reduced in proportion to the amount of the premises taken. All damages awarded for such taking shall belong to and be the property of the Landlord, whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the premises herein leased; provided, however, that the Landlord shall not be entitled to any portion of the award made to the Tenant for loss of business or depreciation to and costs or renewal of merchandise and trade fixtures which are deemed the property of Tenant.

**Reservation**

(17)  The Landlord reserves the right of free access at all times to the roof of said leased premises and reserves the right to rent said roof for advertising purposes. The Tenant shall not erect any structures for storage or any mail, or use the roof for any purpose without the consent in writing of the Landlord.

**Care of Premises**

(18)  The Tenant shall not perform any acts or carry on any practices which may injure the building or be a nuisance or menace to other Tenants in the building and shall keep premises under his control (including adjoining driveways, streets, alleys or yards) clean and free from rubbish, dirt, snow and ice at all times, and it is further agreed that in the event the Tenant shall not comply with these provisions, the Landlord may enter upon said premises and have rubbish, dirt and ashes removed and the side walks cleaned, in which event the Tenant agrees to pay all charges that the Landlord shall pay for hauling rubbish, ashes and dirt, or cleaning walks. Said charges shall be paid in the manner provided for in Paragraph 6 of this lease in the event Landlord by the Tenant as soon as bill is presented to him and the Landlord shall have the same remedy as is provided in Paragraph 6 of this lease in the event of Tenant's failure to pay.

**Condition of Premises**

(19)  The Tenant shall at his own expense under penalty of forfeiture and damages promptly comply with all lawful laws, orders, regulations or ordinances of all municipal, County and State authorities affecting the premises hereby leased and the cleanliness, safety, occupation and use of same.

(20)  The Tenant further acknowledges that he has examined the said leased premises prior to the making of this lease, and knows the condition thereof, and that no representations as to the condition or state of repairs thereof have been made by the Landlord, or his agent, which are not herein expressed, and the Tenant hereby accepts the leased premises in their present condition as of the date of the execution of this lease.

(21)  The Landlord shall not be responsible or liable to the Tenant for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connected with the premises hereby leased or any part of the building of which the leased premises are a part or for any loss or damage resulting to the Tenant or his property from bursting, stoppage or leaking of water, gas, sewer or steam pipes.

**Re-Renting** (22) The Tenant hereby agrees that for a period commencing 60 days prior to the termination of this lease, the Landlord may show the premises to prospective Tenants, and 60 days prior to the termination of this lease, may display in and about said premises and in the windows thereof, the usual and ordinary "TO RENT" signs.

**Holding Over** (23) It is hereby agreed that in the event of the Tenant herein holding over after the termination of this lease, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary.

**Gas, Water, Heat, Electricity** (24) The Tenant will pay all charges made against said leased premises for gas, water, heat and electricity during the continuance of this lease, as the same shall become due. The Landlord shall not be responsible for any interference to the utility systems during the term of this Lease.

**Advertising Display** (25) It is further agreed that all signs and advertising displayed in and about the premises shall be such only as advertise the business carried on upon said premises, and that the Landlord shall control the character and size thereof, and that no sign shall be displayed excepting such as shall be approved in writing by the Landlord, and that no awning shall be installed or used on the exterior of said building unless approved in writing by the Landlord.

**Access to Premises** (26) The Landlord shall have the right to enter upon the leased premises at all reasonable hours for the purpose of inspecting the same. If the Landlord deems any repairs necessary he may demand that the Tenant make the same and if the Tenant refuses or neglects forthwith to commence such repairs and complete the same with reasonable dispatch, the Landlord may make or cause to be made such repairs and shall not be responsible to the Tenant for any loss or damage that may accrue to his stock or business by reason thereof, and if the Landlord makes or causes to be made such repairs the Tenant agrees that he will forthwith on demand pay to the Landlord the rent thereof with interest at 7% per annum, and if he shall make default in such payment the Landlord shall have the remedies provided in Paragraph 8 hereof.

**Re-Entry** (27) In case any rent shall be due and unpaid or if default be made in any of the covenants herein contained, or if said leased premises shall be deserted or vacated, then it shall be lawful for the Landlord, its certain attorney, heirs, representatives and assigns, to re-enter into, re-possess the said premises and the Tenant and each and every occupant to remove and put out.

**Quiet Enjoyment** (28) The Landlord covenants that the said Tenant, on payment of all the aforesaid installments and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the said demised premises for the term aforesaid.

**Expenses on Damages Re-Entry** (29) In the event that the Landlord shall, during the period covered by this lease, obtain possession of said premises by re-entry, summary proceedings, or otherwise, the Tenant hereby agrees to pay the Landlord the expense incurred in obtaining possession of said premises, and also all expenses and commissions which may be paid in and about the letting of the same, and all other damages.

**Remedies not Exclusive** (30) It is agreed that each and every of the rights, remedies and benefits provided by this lease shall be cumulative, and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

**Waiver** (31) One or more waivers of any covenant or condition by the Landlord shall not be construed as a waiver of a further breach of the same covenant or condition.

**Delay of Possession** (32) It is understood that if the Tenant shall be unable to enter into and occupy the premises hereby leased at the time above provided, by reason of the said premises not being ready for occupancy, or by reason of the holding over of any previous occupant of said premises, or as a result of any cause or reason beyond the direct control of the Landlord, the Landlord shall not be liable in damages to the Tenant therefor, but during the period the Tenant shall be unable to occupy said premises as hereinbefore provided, the rental therefor shall be abated and the Landlord is to be the sole judge as to when the premises are ready for occupancy.

**Notices** (33) Whenever under this lease a provision is made for notice of any kind it shall be deemed sufficient notice and service thereof if such notice to the Tenant is in writing addressed to the Tenant at his last known Post Office address or at the leased premises and deposited in the mail with postage prepaid and if such notice to the Landlord is in writing addressed to the last known Post Office address of the Landlord and deposited in the mail with postage prepaid. Notice need be sent to only one Tenant or Landlord where the Tenant or Landlord is more than one person.

(34) It is agreed that in this lease the word "he" shall be used as synonymous with the words "she," "it" and "they," and the word "his" synonymous with the words "her," "its" and "their."

(35) The covenants, conditions and agreements made and entered into by the parties hereto are declared binding on their respective heirs, successors, representatives and assigns.

(36) In the event security is given, Paragraph 37 on the last page shall be deemed a part of this lease.

See Rider attached hereto and made a part hereof for additional terms and conditions.

_____

_____

_____

_____

_____

_____

_____

IN WITNESS WHEREOF, The parties have hereunto set their hands and seals the day and year first above written.

"Landlord"

WITNESSED BY:                          TARNO L. L. C.

....................                  By ........................... (L. S.)
                                        Maher H. Hazime, Member

....................                  ................................. (L. S.)

                                      "TENANT"

....................                  EZ AUTO REPAIR, INC. .......... (L. S.)

....................                  ................................. (L. S.)
                                        Maher M. Hazime, President

                                      ................................. (L. S.)

IN CONSIDERATION of the letting of the premises in the foregoing instrument described, and for the sum of one dollar, to .................................. paid .................... , do hereby become surety for the punctual payment of the rent and performance of the covenants in said instrument mentioned, to be paid and performed by the second part ............ therein named; and if any defaults shall at any time be made therein ........................

do hereby promise and agree to pay unto the part ...................... of the final part named in said instrument, the said rent and arrears thereof that may be due, and fully satisfy the condition of said instrument, and all damages that may occur by reason of the non-fulfillment thereof, without requiring notice or proof of the demand being made. The Landlord shall not be held in strict construction adopted in matter of principal and surety. The surety shall not have the right to claim discharge, or plead by way of defense any extension of time given by the Landlord, failure of the Landlord to give notice of default, receipt by the Landlord of securities from the Tenant, failure of the Landlord to pursue the Tenant and his property with due diligence or to apply other remedies and other securities which may possibly be available to the Landlord and any direct release, unless it be in writing duly authorized and executed.

WITNESS ........ hand ..... and seal ..... this ........ ............................ day of ....................... ,

19 ...... .............................................................. (L. S.)

STATE OF MICHIGAN }
COUNTY OF.................. } ss.

On this ........................ day of ........................ , in the year of our Lord One Thousand Nine Hundred and ..................... before me, a ...................................... in and for said County, appeared ........................ to me personally known, who, being by me sworn, did (1) ........................................ say that (2) ........................ the ........................ of ........................ the corporation named in and which executed the within instrument, and that the seal affixed to said instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors; and said ........................ acknowledged said instrument to be the free act and deed of said corporation.

........................................

........................ Notary Public ........ ........ County, Michigan.

My Commission Expires ........................
NOTE: It must state not affect acknowledges, insert at (1) "each be himself," and (1) "they are respectively."

SECURITY PROVISION
Paragraph 37 (Refer to Paragraph 26 of Lease)

The Landlord herewith acknowledges the receipt of ........................
($ ........................ ), which he is to retain as security for the faithful performance of all of the covenants, conditions, and agreements of this lease, but in no event shall the Landlord be obliged to apply the same upon rents or other charges in arrears or upon damages for the Tenant's failure to perform the said covenants, conditions, and agreements; the Landlord may so apply said security at his option, and the Landlord's right to the possession of the premises for non-payment of rent or for any other reason shall not in any event be affected by reason of the fact that the Landlord holds this security. The said sum if not applied toward the payment of rent in arrears or toward the payment of damages suffered by the Landlord by reason of the Tenant's breach of the covenants, conditions, and agreements of this lease is to be returned to the Tenant when this lease is terminated, according to these terms, and in no event is the said security to be returned until the Tenant has vacated the premises and delivered possession to the Landlord.

In the event that the Landlord repossesses himself of the said premises because of the Tenant's default or because of the Tenant's failure to carry out the covenants, conditions, and agreements of this lease, the Landlord may apply the said security upon all damages suffered to the date of said repossession and may retain the said security to apply upon such damages as may be suffered or shall accrue thereafter by reason of the Tenant's default or breach. The Landlord shall not be obliged to keep the said security as a separate fund, but may mix the said security with his own funds.

........................................ (L. S.)

Detroit Real Estate Board

Business Property Lease

Landlord: TARMO, L.L.C.

Tenant: EZ AUTO REPAIR, INC.

Premise: 19111 Grand River
Detroit, Michigan

From: Month-to-Month

To: ........................

RIDER ATTACHED TO AND MADE A PART OF A CERTAIN LEASE AGREEMENT DATED DECEMBER 1, 2004, BY AND BETWEEN TARMO, L.L.C., AS LANDLORD AND EZ AUTO REPAIR, INC., AS TENANT, REGARDING PREMISES LOCATED AT 19111 GRAND RIVER, DETROIT, MICHIGAN

38. **PERSONAL PROPERTY TAXES.** Tenant shall be responsible for, and shall timely pay taxes assessed during the term of this Lease against any personal property of any kind owned by or placed in, upon or above the leased premises by Tenant. Payment vouchers and/or verification of payment of the personal property taxes shall be submitted to Landlord for each billing of the personal property tax.

39. **TAXES.** Tenant shall pay to Landlord as additional rent during the term of this Lease, all taxes as hereinafter defined. As used herein, "taxes" shall mean all public charges, impositions, real estate taxes, assessments, including special assessments, levied upon or assessed with respect to the leased premises, and the rentals derived therefrom (if hereafter imposed in substitution for currently existing taxes), whether such charge, imposition, tax or assessment shall be in existence as of the date hereof or shall be enacted or imposed any time hereafter. Included in such taxes shall be any tax, whether or not related to the valuation of the leased premises which shall be levied in substitution for any existing tax presently applicable thereto. Such taxes shall not include any franchise tax, transfer tax, or income tax payable by Landlord unless such tax shall have been imposed in substitution for currently existing taxes. In the event substituted levy shall be an increased income tax, then the amount applicable to the leased premises shall be determined as if the net taxable income from the lease premises were the only income of Landlord. Taxes shall be deemed levied or assessed with respect to the calendar year in which the same initially constitute a lien against the land, the building(s) or the leased premises, or any part thereof.

Tenant shall pay to Landlord the taxes as aforesaid in monthly installments, in advance, in an amount estimated by Landlord from time-to-time. Upon receipt of all tax bills and assessment bills attributable to the demised premises, Landlord shall furnish Tenant, upon request, with a written statement of the actual amount of the taxes and assessments for each calendar year during the term of this Lease. If the total amount paid by Tenant under this section for any calendar year shall be less than the amount due from Tenant for such year, Tenant shall pay to Landlord the difference within ten (10) days after receipt of the statement from the Landlord, and if the total amount paid by Tenant shall exceed the amount due, Landlord shall credit the difference against the next installment of taxes and assessments due from Tenant. The current estimate for real property taxes is $350 per month.

40. **INSURANCE.** In addition to, and notwithstanding any other insurance requirements of the Tenant as set forth in this Lease Agreement, Tenant shall obtain general liability, boiler and machinery, excess liability, fire and extended coverage insurance (including rental interruption insurance and difference in conditions coverage, if any), on the full

T:\TCS\hazime\3c-rider to lease agreement.001 (12-3-04).doc

Page 1 of 6

replacement value of the building in which the demised premises are located and all improvements thereon. Such fire and extended coverage insurance shall be written on a replacement cost all risk basis and shall be in an amount sufficient to replace the premises in the same condition as existed as of the date of the Lease, together with any improvements made by Tenant which shall become the property of Landlord upon expiration of the term of the Lease. Such improvements shall in no event include Tenant's trade fixtures or business equipment, all of which shall be insured by Tenant separately. With regard to insurance obtained by Tenant covering the demised premises, Tenant shall furnish evidence of such insurance to Landlord as requested and such insurance shall name both Landlord and Tenant as insured parties under said policies in accordance with their respective interests in the premises.

41. **NON-LIABILITY.**  Tenant does hereby release Landlord from any liability or responsibility with regard to damage to the Tenant's premises or the contents thereof, arising from or relating to bursting or overflow of water, gas, sewer or steam pipes, or heating, cooling or plumbing systems, or from interference with regard to Tenant's business from breakdown of utility systems, leakage of water from the roof or any other cause whatsoever. Tenant further agrees that Landlord is released by Tenant from any liability or responsibility to Tenant for any loss of business or other loss or damage resulting to Tenant, its business or property from damage by fire or any other peril covered by extended coverage insurance regardless of any degree of negligence of Landlord and/or Landlord's agents, employees and representatives with respect thereto.  Because this paragraph will preclude the assignment of any claim mentioned in it by way of subrogation (or otherwise) to an insurance company (or any other person), Tenant agrees to immediately give to its insurance company written notice of the terms of the waiver contained in this paragraph and to have the insurance policy properly endorsed, if necessary, to prevent the invalidation of the insurance coverage by reason of the waiver contained in this paragraph. As to any insurance required to be obtained under this Lease Agreement, the certificates of insurance shall expressly provide for the Landlord to be named as a coinsured and such certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Landlord in the event of material alteration to or cancellation of the coverages evidenced by such certificates. Further, in the event that the Tenant shall fail to procure any such required insurance, Landlord may, at its option, procure the same for the account of Tenant and the cost thereof shall be paid to Landlord as additional rent within ten (10) days of receipt by Tenant of bills therefor.

42. **DEFAULT.**  In the event of any failure by Tenant to pay and Landlord to receive any rental or other charges due herein with ten (10) days after the same shall be due, or any failure to perform any other of the terms, conditions or covenants of this Lease to be observed or performed by Tenant for more than twenty (20) days after written notice of such default shall have been mailed to Tenant, or if Tenant shall have become bankrupt or insolvent, or file any debtor proceedings or take or have taken against Tenant in any court pursuant to any statute either of the United States or any state a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or if Tenant makes an assignment for the benefit of creditors,

T:\TGS\business\rider to lease agreement.001 (12-3-04).doc

Page 2 of 6

or petitions for or enters into an arrangement with creditors, or if Tenant shall abandon the leased premises, or suffer this Lease to be taken under any writ of execution, then Landlord, besides other rights or remedies it may have, shall have the immediate right to reentry and may remove all persons and property from the leased premises and such property may be removed and stored in a public warehouse elsewhere at the cost of, and for the account of Tenant, all without service of notice or resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby.

43. **RIGHT TO REENTER.** Should Landlord elect to reenter as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may either terminate this Lease or it may from time-to-time without terminating this Lease, make such alterations and repairs as may be necessary in order to relet the leased premises, and relet the leased premises or any part thereof for such term or terms (which may be for a term extending beyond the term of this Lease) and at such rental or rentals, and upon such other terms and conditions as Landlord, in its sole discretion, may deem advisable. Upon each such reletting, all rentals received by Landlord from such reletting shall be applied first to the payment of any indebtedness other than rent due hereunder from Tenant to Landlord; second, to the payment of any costs and expenses of such reletting, including brokerage fees and attorneys' fees and of costs of such alterations and repairs; third, to the payment of rent due and unpaid hereunder, and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder. If such rentals received from such reletting during any month be less than that to be paid during that month by Tenant hereunder, Tenant shall pay any such deficiency to Landlord. Such deficiency shall be calculated and paid monthly. No such reentry or taking possession of the leased premises by Landlord shall be construed as an election on its part to terminate the Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, Landlord may, at any time hereafter, elect to terminate this Lease for such previous breach. Should Landlord at any time terminate this Lease for any breach, in addition to any other remedies it may have, it may recover from Tenant all damages it may incur by reason of such breach, including the cost of recovering the leased premises, reasonable attorneys' fees incidental thereto, and including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this Lease for the remainder of the stated term over the reasonable rental value of the leased premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from Tenant to Landlord.

44. **NET NET NET LEASE.** It is understood and agreed between the parties hereto that this Lease shall be read and construed as a "Net Net Net Lease" with Tenant to be responsible to pay all taxes, maintenance and insurance regarding the demised premises, arising out of or relating to the building in which the demised premises are located, and the adjacent parking lots and landscaped areas, including, but not limited to, maintaining, repairing and/or replacing all structural and non-structural portions of said building, the parking and

T:\TGS\barker\34-rider to lease agreement.001 (12-5-06).doc

Page 3 of 6

landscaped areas, all utility systems, including gas, water, sewer, heat, electricity, air-conditioning, compressors, furnaces, as well as the sewer, drain and water lines. Tenant shall further be responsible to maintain the parking area free and clear of snow, ice and debris, and shall further be required to repair and/or replace the parking lot surface as when deemed necessary by Landlord, in Landlord's sole discretion, and shall further be required to reline the parking lot and do that which is required by the local municipality or governmental authority, in order to comply with applicable laws and ordinances. Landlord represents that the heating, ventilating and air-conditioning system in the demised premises, including the air-conditioning compressor and furnace, are in good working order and condition. Tenant shall obtain, at Tenant's cost, and provide evidence thereof to Landlord of a maintenance contract on the HVAC system, including the compressor and furnace. Tenant shall provide evidence of such maintenance contract to Landlord at the beginning of the Lease and each year thereafter.

45.  **LANDLORD'S RIGHT TO MORTGAGE.** Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any mortgage or mortgages now or hereafter placed upon the Landlord's interest in the demised premises or upon any building(s) hereinafter placed upon the demised premises. Tenant covenants and agrees to execute and deliver upon demand such instrument or instruments subordinating this Lease to the lien of any such mortgage or mortgages as shall be desired by Landlord and/or any mortgagee or proposed mortgagee and hereby irrevocably appoints Landlord the attorney-in-fact of Tenant to execute, deliver and record any such instrument or instruments for and in the name of Tenant.

Tenant further agrees that at any time, and from time-to-time upon not less than ten (10) days prior written request by Landlord, to execute, acknowledge and deliver to Landlord a statement, in writing, in form supplied by, or satisfactory to Landlord, certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, stating the modifications) and the dates to which the basic rent, as adjusted, and other charges have been paid in advance, if any. In the event that Tenant fails to provide such statement in a timely manner, then Tenant hereby constitutes and appoints Landlord as its attorney-in-fact to execute and deliver such statement.

46.  **RELATION OF PARTIES.** Nothing contained herein shall be deemed nor construed by the parties hereto nor by any third party as creating the relationship of principal and agent, or partnership, or of joint venture between the parties hereto, it being understood and agreed that only the relationship of Landlord and Tenant has been created hereby.

47.  **ASSIGNMENT AND SUBLETTING.** Tenant shall not assign nor sublet the subject demised premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld. In the event that Landlord shall consent to such assignment or subletting, any sums or other economic consideration received by Tenant herein as a result of the same which exceed in the aggregate the total sums which Tenant is obligated to pay to Landlord under this Lease, shall be payable to Landlord as additional rental under this

Lease without effecting or reducing any other obligation of Tenant hereunder.

48. **HEADINGS.** The headings contained in this Agreement are for reference purposes only, and shall not effect the meaning nor interpretation of this Agreement.

49. **INTEGRATION.** This Rider and the attached Lease Agreement constitutes the entire understanding and agreement between the parties hereto and no modification or amendment shall be deemed binding or effective unless first reduced to writing and signed by each of the parties hereto.

50. **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

51. **UNENFORCEABILITY.** The invalidity or unenforceability of any particular provision of this Agreement shall not effect the other provisions hereof and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

52. **NOTICE.** Any notice or any document to be delivered hereunder by either of the parties shall be in writing and delivered personally or sent by certified mail, return receipt requested, postage prepaid, or by express mail, to the parties, at their respective addresses as reflected on page 1 of the form of Lease Agreement, or to such other address as shall be furnished in writing by any of the parties hereto. The date of delivery in person or the date of mailing or the date of placement with the express carrier of each notice or of the document shall be deemed the date of receipt thereof.

53. **LATE CHARGES.** Tenant shall pay to Landlord for each month in which Tenant is in default of the Lease Agreement a late charge to cover the administrative and bookkeeping expenses incurred by Landlord resulting from such late payment, which late charge shall be in the amount of $250.00 per month. Such late charge, if incurred, shall become immediately due and payable without the requirement of any notice from the Landlord.

54. **BROKER'S COMMISSION.** Tenant does hereby represent to Landlord that it has not employed any broker in connection with this matter, and that Landlord shall not be liable for any brokerage fees or similar commissions as may be claimed or incurred by Tenant, and Tenant shall hold Landlord harmless from any such claim, including costs and attorney fees should it become necessary for Landlord to defend any action for commissions based on any such claim arising from an alleged agreement or act by the Tenant, such agreement to survive the termination of this Lease.

55. **LEGAL EXPENSES.** In the event suit shall be brought for recovery of possession of the leased premises, the recovery of rent or any other amount due under the provisions of this Lease, or because of the breach of any other covenant herein contained on the part of the Tenant to be kept and performed, and a breach shall be established, Tenant shall pay to

Landlord all expenses incurred therefore, including Landlord's attorney fees and court costs.

56. **EXECUTION OF LEASE.** The submission of this Lease for examination to Tenant does not constitute a reservation of, or option for the leased premises and this Lease shall become effective as a Lease only upon execution and delivery thereof by Landlord and Tenant.

57. **INTEREST ON PAST DUE OBLIGATIONS.** Any amount due from Tenant to Landlord hereunder which is not paid when due shall bear interest at the rate of 10% per annum from the date due unless otherwise specifically provided herein, but the payment of such interest shall not excuse or cure default of Tenant under this Lease.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this 1st day of December, 2004.

WITNESSES:                              "LANDLORD"

                                        TARMO, L.L.C.
                                        a Michigan limited liability company

_____                     By: _____
                                            Maher M. Hazime, Member


                                        "TENANT"

                                        EZ AUTO REPAIR, INC.
                                        a Michigan corporation

_____                     By: _____

                                            Its President





WARRANTY DEED—891

67182611

L 23462 m 697

The Grantor(s)  **Mark Robert Hawley, a single man,**
**Russell Lee Hawley, a single man and**
**Marcy Ann Hawley, a single woman**

, whose address is

**26333 Cathedral, Radford, Michigan**

John H. Hoskins, Jr. and
Marilyn M. Hoskins, his wife
16624 Gillman, Livonia, MI  48151

the following described premises situated in the  City
of  Detroit ,  County of  Wayne
and State of Michigan:

Lots 1374 through 1377 inclusive, Rosedale Park
Subdivision No. 1, as recorded in liber 37,
page 73 of Plats, Wayne County Records,
commonly known as 19111 Grand River,
Detroit, Michigan

for the sum of  $50,000.00    **Fifty Thousand Dollars**

subject to easements and building and use restrictions of record and further subject to

all matters, liens or encumbrances rising from or created
through the acts or omissions of parties other than the
Grantors since February 3, 1987, the date of a certain Land
Contract, the fulfillment of which, this Deed is given.

Dated this _____  day of  September        87

Signed in presence of                          Signed by:

THOMAS F. CHENOT                          MARK ROBERT HAWLEY

Anna Marie Rossmann                        RUSSELL LEE HAWLEY

                                           MARCY ANN HAWLEY

**STATE OF MICHIGAN,**
COUNTY OF  Oakland         ss.

The foregoing instrument was acknowledged before me this ____ day of  September
19  87 , by

Mark Robert Hawley, Russell Lee Hawley and Marcy Ann Hawley

THOMAS F. CHENOT
Notary Public,                             Oakland      County,
Michigan
My commission expires:  4-2-90

County Treasurer's Certificate

This is to certify that there are no tax liens or titles on the
premises and that taxes are paid for FIVE YEARS previous to
date of this instrument EXCEPT:
No.  7608

OCT  8  1987

When Recorded Return To:
Anna Marie Rossmann
National Bank of Detroit
Detroit, Ma 48203

City Treasurer's Evidence

OCT  H  1987

Send Subsequent Tax Bill To:
Grantees

Drafted By:
THOMAS F. CHENOT
32523 Grand River Ave
Farmington, MI  48024
(313) 476-7387

Tax Parcel                                 Recording Fee          Transfer Tax  $75.00

* TYPE OR PRINT NAMES UNDER SIGNATURES

WAYNE,MI





Branch :MTT,User :MT01                Title Officer: KRIS B.   Order: 9574                Station Id :CWPP
                                       Comment: 19111GRRIVER

TRANS

01019621  FEB 16 2001

Liber-33229    Page-478
201076298    2/16/2001
Bernard J. Youngblood, Wayne Co. Register of Deeds

FIRST CENTENNIAL TITLE, INC.

Cen 10561

## MEMORANDUM OF LAND CONTRACT

THIS MEMORANDUM OF LAND CONTRACT entered into this __8th__ day of __December, 2000__
by and between:

__John H. Hoskins, Jr. and Marilyn N. Hoskins, husband and wife__
__19536 Gillman, Livonia, MI  48152__ , whose address is
_____, hereinafter "Seller"
and __Meyer Rashel, a married man and Tahn Dike, a married man as joint tenants with full__ , whose address is
__rights of surviorship, 7518 Freda, Dearborn, MI  48126__ , hereinafter "Buyer"

## WITNESSETH:

WHEREAS, Buyer and Seller have entered into a Land Contract of even date herewith; and,

WHEREAS, the parties desire to enter into this Memorandum of Land Contract to give record notice of existence of said Land Contract.

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration Seller acknowledges and agrees that they have sold to Buyer on the Land Contract dated __December 6, 2000__ the following described premises situated in the __City__ of __Detroit__
County of __Wayne__ and State of Michigan, to-wit:

Lots 1374, 1375, 1376 and 1377, Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records.

19111 Grand River Ave., Detroit, MI

Ward 22, 007267-70

The purpose of this Memorandum of Land Contract is to give record notice to the existence of the aforesaid Land Contract.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum of Land Contract and have caused their hands and seals to be affixed hereto the day and year first above written.

Signed, Sealed and Delivered
In Presence of:

_____            _John A. Hoskins Jr.__ (L.S.)
J. SHEER                            John H. Hoskins, Jr.

_Patricia A. Wright__              _____ (L.S.)
PATRICIA A. WRIGHT                  MARILYN N. HOSKINS

                                   _____ (L.S.)

                                   _____ (L.S.)

STATE OF MICHIGAN

COUNTY OF __Wayne__ ss.

The foregoing instrument was acknowledged before me this __8th__ day of __December, 2000__
by __John H. Hoskins, Jr. and Marilyn N. Hoskins, husband and wife__

Drafted by and return to:
John H. Hoskins, Jr.
c/o First Centennial Title, Inc.       _Jesse L. Sealer__     NOTARY PUBLIC
14600 Farmington Road  #107            Notary Public, __Wayne__ County, Michigan
Livonia, MI  48154
                                       My Commission Expires: __12-11-02__

Form 3238-8

LCM /py Sch





# LAND CONTRACT
### WITH ALTERNATE TAX AND INSURANCE PROVISIONS

<u>PARTIES</u>

This Contract, Made this 2-5 day of April, 2002 between NEMR RAHAL and RANIA RAHAL, his wife and TAHA DIKA and FATME DIKA, his wife, hereinafter referred to as the "Seller," whose address is 7515 Freda St., Dearborn, Michigan 48126 and ALI HUSSEIN ASSAF, a married man and MAHER M. HAZIME, a married man, hereinafter referred to as the "Purchaser," whose address is 5450 Williamson, Dearborn, MI 48126

## Witnesseth:

<u>DESCRIPTION OF PROPERTY</u>

1. THE SELLER AGREES AS FOLLOWS:

(a)  To sell and convey to the Purchaser land in the City of Dearborn, Wayne County, Michigan, described as:

> Lots 1374, 1375, 1375 and 1377 Rosedale Park Subdivision No. 1, according to the plat thereof as recorded in Liber 37 of Plats, Page 73, Wayne County Records
>
> Commonly known as:  19111 Grand River

together with all tenements, hereditaments, improvements, including all lighting fixtures, plumbing fixtures, if any, and automotive lift now on the premises, and subject to all applicable building and use restrictions, and easements, if any, affecting the premises, and subject to all applicable building and use restrictions, and easements, if any, and _____ now on the premises, and subject to all applicable building and use restrictions, and easements, if any, affecting the premises.

<u>TERMS OF PAYMENT</u>

(b)  That the consideration for the sale of the above described premises to the Purchaser is: Three Hundred Seventy Five Thousand and 00/100 ($375,000.00) DOLLARS, of which the sum of Five Thousand and 00/100 ($5,000.00) DOLLARS, has been heretofore been paid to the Seller, the receipt of which is hereby acknowledged, and the balance of <u>Three Hundred Seventy Thousand and  00/100 ($370,000.00) DOLLARS</u>, is to be paid to the Seller as follows:



1. The Purchaser will pay Ninety Five Thousand and 00/100 ($95,000.00) Dollars at closing to the Seller by cashier's check.

2. The Two Hundred Seventy Five Thousand and 00/100 ($275,000.00) Dollar balance of the Purchase Price will be payable by a land contract with the following terms:

    a. Purchaser agrees to assume and pay the Land Contract, dated December 6, 2000, by Mr. and Mrs. Hoskins, as Sellers, and Nemr Rahal and Taha Dika, as Purchasers. The principal balance after the April 2002 payment is One Hundred Seventy Seven Thousand Three Hundred Twenty Nine and 59/100 ($177,329.59) Dollars.

    b. Purchaser agrees to pay One Thousand and 00/100 ($1,000.00) Dollars per month to the Seller with no interest accruing on the unpaid balance commencing one month after closing.

    c. The monthly payment from the Purchaser to the Seller shall increase to Two Thousand and 00/100 ($2,000.00) Dollars per month on January 1, 2003.

    d. Within nine (9) months from the date of closing the Purchaser will pay an additional Fifty Thousand and 00/100 ($50,000.00) Dollars to Seller to be applied against the principal balance.

e. In the event monthly payments are not received within

7 days from the due date, a late fee of Two Hundred and

00/100 ($200.00) Dollars per payment will be assessed.

This is a service charge and not interest.

f. In the event the Fifty Thousand and 00/100 ($50,000.00)

Dollars is late by 10 days, there will be a late fee of One

Thousand and 00/100 ($1,000.00) Dollars and the Land

Contract will be in Default. This is a service charge and

not interest.

g. A default of the Hoskins land contract will constitute a

default under the Land Contract between the Seller and the

Purchaser.

h. When the Purchaser has paid Ninety Seven Thousand

Six Hundred Seventy and 41/100 ($97,670.41) Dollars to the Sellers, the Sellers

will assign their interest in the Hoskins land contract to the Purchaser.

### SELLER'S DUTY TO CONVEY

(c) Upon receiving payment in full of all sums owing herein. less the amount then due on any existing mortgage or mortgages, and the surrender of the duplicate of this contract, to execute and deliver to the Purchaser or the Purchaser's assigns, a good and sufficient Warranty Deed conveying title to said land, subject to aforesaid restrictions and easements and subject to any then existing mortgage or mortgages, and free from all other encumbrances, except such as may be herein set forth, and except such encumbrances as shall have accrued or attached since the date hereof through the acts or omissions of persons other than the Seller or his assigns.

### TO FURNISH TITLE EVIDENCE

(d) To deliver to the Purchaser as evidence of title, at the Seller's option, either a Policy of Title Insurance insuring Purchaser or Abstract of Title, the effective date of the policy or certification date of Abstract to be approximately the date of this contract, and issued by First

Centennial Title Agency, Inc.   If the evidence of title is an Abstract of Title, the Seller shall have the right to retain possession of Abstract of Title during the life of this contract and upon demand, shall lend it to Purchaser upon the pledging of a reasonable security.

PURCHASER'S DUTIES

## 2. THE PURCHASER AGREES AS FOLLOWS:

(a) To purchase said land and pay the Seller the sum aforesaid, with the interest thereon as above provided.

(b) To use, maintain and occupy said premises in accordance with any and all restrictions thereon.

(c) To keep the premises in accordance with all police, sanitary and other regulations imposed by any governmental authority.

TO PAY TAXES AND KEEP PREMISES INSURED

(d) To pay all taxes and assessments hereafter levied on said premises before any penalty for non-payment attaches thereto, and submit receipts to Seller upon request, as evidence of payment thereof; also at all times  to keep the buildings now or hereafter on the premises insured against loss and damage, in manner and to an amount approved by the Seller, and to deliver the policies as issue to the Seller with the premiums fully paid.

INSERT AMOUNT, IF ADVANCE MONTHLY INSTALLMENT
METHOD OF TAXES AND INSURANCE IS TO BE ADOPTED

(f) That he has examined {a title Insurance Commitment dated / an Abstract of Title Certified to  April 15, 2002  covering the above described premises, and is satisfied with the marketability of the title shown thereby, and has examined the above described premises and is satisfied with the physical condition of any structures thereon.

MAINTENANCE OF PREMISES

(g) To keep and maintain the premises and the buildings thereon in as good condition as they are at the date hereof, reasonable wear and tear excepted, and not to commit waste, remove or demolish any improvements thereon, or otherwise diminish the value of the Seller's security, without the written consent of the Seller.

MORTGAGE BY SELLER

## 3. THE SELLER AND PURCHASER MUTUALLY AGREE AS FOLLOWS:

(a) That the Seller may, at any time during the continuance of this contract encumber said land by mortgage or mortgages to secure not more than the unpaid balance of this contract at the time such mortgage or mortgages are executed.  Such mortgage or mortgages shall provide for payment of principal and  interest in monthly installments which do not exceed such installments

provided for in this contract; shall provide for a rate of interest on the unpaid balance of the mortgage debt which does not exceed the rate of interest provided in Paragraph 1(b); or on such other terms as may be agreed upon by the Seller and Purchaser, and shall be a first lien upon the land superior to the rights of the Purchaser herein; provided notice of the execution of said mortgage or mortgages containing the name and address of the mortgagee or his agent; the amount of such mortgage or mortgages, the rate of interest and maturity of the principal and interest shall be sent to the Purchaser by registered mail promptly after execution hereof. Purchaser will, on demand, execute any instruments demanded by the Seller, necessary or requisite to subordinate the rights of the Purchaser hereunder to the lien of any such mortgage or mortgages. In event said Purchaser shall refuse to execute any instruments demanded by said Seller and shall refuse to accept such registered mail hereinbefore provided, or said registered mail shall be returned unclaimed, then the Seller may post such notice in two conspicuous places on said premises, and upon making affidavit duly sworn to of such posting, this proceeding shall operate the same as if said Purchaser had consented to the execution of said mortgage or mortgages, and Purchaser's rights shall be subordinate to said mortgage or mortgages as hereinbefore provided. The consent obtained, or subordination as otherwise herein provided, under or by virtue of the foregoing power, shall extend to any and all renewals or extensions or amendments of said mortgage or mortgages, after Seller has given notice to the Purchaser as above provided for giving notice of the execution of said mortgage or mortgages.

### ENCUMBRANCES ON SELLER'S TITLE

(b) That if the Seller's interest be that of land contract, or now or hereafter be encumbered by mortgage, the Seller shall meet the payments of principal and interest thereon as they mature and produce evidence thereof to the Purchaser on demand, and in default of the Seller said Purchaser may pay the same. Such payments by Purchaser shall be credited on the sums first maturing hereon, with interest at the rate provided in Paragraph 1 (b) on payments so made. If proceedings are commenced to recover possession or to enforce the payment of such contract or mortgage because of the Seller's default, the Purchaser may at any time thereafter, while such proceedings are pending, encumber said land by mortgage, securing such sum as can be obtained, upon such terms as may be required, and with the proceeds pay and discharge such mortgage, or purchase money lien. Any mortgage so given shall be a first lien upon the land superior to the rights of the Seller therein, and thereafter the Purchaser shall pay the principal and interest on such mortgage so given as they mature, which payments shall be credited on the sums matured or first maturing hereon. When either of the powers in this contract contained, a conveyance shall be made in the form above provided containing a covenant by the grantee to assume and agree to pay the same.

### NON-PAYMENT OF TAXES OR INSURANCE

(c) That if default is made by the Purchaser in the payment of any taxes, assessments or insurance premiums, or in the payment of the sums provided for in Paragraph 2(e), or in the delivery of any policy as hereinbefore provided, the Seller may pay such taxes or premiums or procure such insurance and pay the premium or premiums thereon, and any sum or sums so paid shall be a further lien on the land and premises, payable to the Seller forthwith with interest at the rate as set forth in Paragraph 1(b) hereof.

ASSIGNMENT BY PURCHASER

(d) No assignment or conveyance by Purchaser shall create any liability whatsoever against the Seller until a duplicate thereof, duly witnessed and acknowledged, together with the residence address of such assignee, shall be delivered to the Seller. Purchaser's liability hereunder shall not be released or affected in any way by delivery of such assignment, or by Seller's endorsement of receipt and/or acceptance thereon.

POSSESSION

(e) The Purchaser shall have the right to possession of the premises from and after the date hereof, unless otherwise herein provided, and be entitled to retain possession thereof only so long as there is no default on his part in carrying out the terms and conditions hereof. In the event the premises hereinabove described are vacant or unimproved, the Purchaser shall be deemed to be in constructive possession only, which possessory right shall cease and terminate after service of a notice of forfeiture of this contract. Erection of signs by Purchaser on vacant or unimproved property shall not constitute actual possession by him.

RIGHT TO FORFEIT

(f) If the Purchaser shall fail to perform this contract or any part thereof, the Seller immediately after such default shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the premises, together with additions and accretions thereto, and consider and treat the Purchaser as his tenant holding over without permission and may take immediate possession of the premises, and the Purchaser and each and every other occupant removed and put out. In all cases where a notice of forfeiture is relied upon by the Seller to terminate rights hereunder, such notice shall specify all unpaid moneys and other breaches of this contract and shall declare forfeiture of this contract effective in fifteen days after service unless such money is paid and any other breaches of this contract are cured within that time.

ACCELERATION CLAUSE

(g) If default is made by the Purchaser and such default continues for a period of forty-five days or more, and the Seller desires to foreclose this contract in equity, then the Seller shall have at his option the right to declare the entire unpaid balance hereunder to be due and payable forthwith, notwithstanding anything herein contained to the contrary.

(h) The wife of the Seller, for a valuable consideration, joins herein and agrees to join in the execution of the Deed to be made in fulfillment hereof.

(i) Time shall be deemed to be of the essence of this contract.

(j) The individual parties hereto represent themselves to be of full age, and the corporate parties hereto represent themselves to be valid corporations with their charters in full force and effect.

NOTICE TO PURCHASER

(k)  Any declarations, notices or papers necessary or proper to terminate, accelerate or enforce this contract this contract shall be presumed conclusively to have been served upon the Purchaser if such instrument is enclosed in an envelope with first class postage fully prepaid,  if said envelope is addressed to the Purchaser at the address set forth in the heading of this contract or at the latest other address which may have been specified by the Purchaser and receipted for in writing by the Seller, and if said envelope is deposited in a United States Post Office Box.

ADDITIONAL CLAUSES

(l)  Purchasers understand and agree to abide by the terms and conditions of December 6, 2000 land contract between John H. Hoskins, Jr. and Marilyn M. Hoskins, his wife as Sellers and Nemr Rahal and Taha Dika, as Purchasers.

(m)  Seller will provide evidence of title prior to closing, but will not be required to update evidence of title when the Land Contract is paid in full and the Warranty Deed issued.

(n)  When the Land Contract is paid in full, the Seller will be responsible for Revenue Stamps and the Sales Tax.

The pronouns and relative words used are written in the masculine and singular only.  If more than one join in the execution hereof as Seller or Purchaser, or either be of the feminine sex or a corporation, such words shall be read as if written, in plural, feminine or neuter, respectively.

**In Witness Whereof,** the parties hereto have executed this contract in duplicate the day and year first above written.

*Signed in the presence of:*

_____

_____

_____

_____

_____

_____

_____
Nemr Rahal

_____
Rania Rahal

_____
Taha Dika

_____
Taha Dika as Attoney-in-Fact for
   Fatme Dika

_____
Ali Hussein Assaf

_____
Maher M. Hazime

STATE OF MICHIGAN)
COUNTY OF Wayne)

The foregoing instrument was acknowledged before me this 25 day of April, 2002 by Nemr Rahal, Rania Rahal, Taha Dika, individually and as Attorney-in-Fact for Fatme Dika, Ali Hussein Assaf and Maher M. Hazime.

_____
Deborah Mathieu
Notary Public
County, Michigan
My Commission expires: June 3, 2004

8

